IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Robert Frost, Jr., #301382, | ) Civil Action No. 8:07-83-JFA-BHH |
| Plaintiff, | ) |
| vs. | ) |
| Jon Ozmint, Director, SCDC; Jeffery Taylor, Lt., Allendale Correctional Institution; Carlos Marshall, Sgt. Allendale Correctional Institution; all in their Individual and Official Capacities, | ) **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Defendants. | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983 and the Eighth Amendment of the United States Constitution. This matter is before the Court on the cross motions for summary judgment of the parties [Doc. 12, 15] and the plaintiff's motion to voluntarily dismiss Defendant Jon Ozmint [Doc. 11], which is styled as a Motion to Amend Complaint.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

## BACKGROUND

The plaintiff contends that the defendants Jeffery Taylor and Carlos Marshall subjected him to excessive force. The plaintiff claims that during a cell search, he was handcuffed and hit repeatedly in the face by defendant Taylor while defendant Marshall held him. (Pl. Mem. Supp. Summ. J. Ex. A.) The plaintiff further alleges that the

defendants then removed the plaintiff's handcuffs and sprayed him with chemical munitions through the food services flap. *Id*. The plaintiff contends that he did not provoke the officers other than to verbally object to the search of his cell.

In contrast, the defendants allege that the plaintiff was causing a disturbance in his cell, by yelling, kicking, and cursing, and that he refused to obey orders to stop. (Def. Mem. Supp. Summ. J. Ex. 6.) The defendants state that chemical munitions, therefore, were employed to make him compliant. *Id*.

While the plaintiff contends that he bled from his face as a result of the alleged assault, medical records evidence no serious or enduring injuries.

## APPLICABLE LAW

### LIBERAL CONSTRUCTION OF *PRO SE* COMPLAINT

The petitioner brought this action *pro se*. This fact requires that his pleadings be accorded liberal construction. *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

**SUMMARY JUDGMENT STANDARD OF REVIEW**

The requirement of liberal construction does not mean that the court can assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. *See* Fed. R. Civ. P. 56(c). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

**I.    EXHAUSTION OF ADMINISTRATIVE REMEDIES**

The defendants first contend that they are entitled to judgment as a matter of law because the plaintiff did not pursue a further appeal in the courts of South Carolina from the denial of his appeal in the Administrative Law Court. The defendants state that once the South Carolina Department of Corrections ("SCDC") makes its final decision, the inmate has the right, in certain cases, to appeal to the South Carolina Administrative Law Court and thereafter to the South Carolina Circuit Court, then the South Carolina Court of Appeals, and finally the South Carolina Supreme Court. It is the defendants' position that

the prisoner must make an appeal at every level in order to exhaust his administrative remedies as required by the PLRA.

The defendants are generally correct that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Prison Litigation Reform Act's ("PLRA") exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," including "excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).

The defendants, however, are incorrect that the plaintiff must seek judicial review of the administrative decision. This district has almost uniformly rejected such an argument. *See Brown v. Evans Correctional Institution Medical Staff*, 2007 WL 1290359, at*4 (D.S.C. April 30, 2007) ("In sum, the fact that the South Carolina legislature made a court available to prisoners who wanted to appeal a final decision by the SCDC denying a SCDC grievance does not alter the federal PLRA by extending its administrative exhaustion requirement to include exhaustion in all state judicial forums."); *Burgess v. Ozmint*,2007 WL 1068198, at *6 n.12 (D.S.C. March 30, 2007). The PLRA requires the exhaustion of remedies within the agency only and not resort to the appellate state courts. *See id; Woodford v. Ngo*, 126 S.Ct. 2378, 2386 (2006) (the agency must be given an opportunity to correct its own errors). The plaintiff, therefore, satisfied the PLRA requirements when his Step 2 grievance was denied by SCDC, as the defendants concede has occurred.

## II.     Qualified Immunity

The defendants next contend that they enjoy qualified immunity. Qualified immunity shields government officials who perform discretionary functions from liability for civil damages under Section 1983 in their personal capacity, "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985). Government officials are entitled to the defense of qualified immunity unless a Section 1983 claim satisfies the following two-prong test (the "qualified immunity test"): (1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was a "clearly established" right "of which a reasonable person would have known."  *See Mellen v. Bunting*, 327 F.3d 355, 365 (4th Cir.2003) (citing *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *Harlow*, 457 U.S. at 818) (internal quotation marks omitted); *see also Wilson*, 526 U.S. at 609.

The plaintiff alleges that he was beaten in the face until he bled and maced without any provocation.  (Pl. Aff. ¶¶ 7-8.)  He contends that he was handcuffed and restrained at the time. *Id*. ¶¶ 3, 4, 7.  He argues that while he expressed disapproval of the defendants' treatment of his belongings in the room, *id*. ¶ 6, he never refused to obey any orders given him by the defendants.  The plaintiff claims that the defendants then exited the cell and removed the restraints. *Id*. ¶ 9.  The plaintiff contends that the defendants returned and administered chemical munitions through the window flap of his cell and into his face. *Id*. ¶ 10.

The defendants account of the story is substantially different.  The incident reports

of the officer defendants indicate that while the officer-defendant Taylor was making rounds in the SMU he observed the plaintiff kicking, yelling, and cursing. (Def. Ex. 2 at 3-4.) The defendants contend that the plaintiff refused to stop after being ordered to do so. *Id*. The defendants allege that the officers, therefore, resorted to use of chemical munitions in order to restrain the plaintiff's behavior. *Id*.

The differing accounts create a serious and genuine issue of material fact as to the issue of qualified immunity. If the defendants beat the plaintiff in the face, while he was restrained, and without provocation, as alleged, then there would be a violation of a clearly established constitutional right to be free from excessive force, a right about which the defendants would have known.

It is well established that the use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To state an excessive force claim, an inmate must show: (1) that the correctional officers acted with a sufficiently culpable state of mind (subjective component), and (2) that the harm inflicted on the inmate was sufficiently serious (objective component). *Williams v. Benjamin,* 77 F.3d 756, 761 (4th Cir. 1996). While prison officials "are entitled to use appropriate force to quell prison disturbances" they may not apply force "maliciously and sadistically for the very purpose of causing harm." *Id*. at 761 (quotation omitted).

Under the qualified immunity analysis, if the plaintiff's allegations prove true, the allegedly unprovoked beating of the plaintiff, while restrained, would qualify as a malicious and sadistic use of force in violation of the Eighth Amendment and the defendants would

not be entitled to any immunity.[1] Summary judgment, therefore, is appropriately denied because the Court cannot resolve the factual dispute between the plaintiff and the defendants as to what actually occurred. The Court is particularly disinclined to do so, when the defendants make no effort to produce evidence regarding the alleged search of the plaintiff's cell and physical altercation therein. The defendants deny that they ever came into the cell, searched it, restrained the defendant, or hit him. But, while the defendants' briefing summarily contends that such occurrences were not a part of the incident (Def. Mem. Supp. Summ. J. at 7), the defendants have not submitted any affidavits of the officer defendants in that regard. The only account of those defendants are their incident reports. (Def. Mem. Supp. Summ. J. Ex. 2.) Those reports simply claim that the plaintiff was in his cell "kicking, yelling, and cursing" and that his refusal to stop justified the use of chemical munitions. *Id*. Of course, the plaintiff claims that the reason he was kicking, yelling, and cursing was because he was being (or had been) struck in the face repeatedly. It is noteworthy that neither the reports nor the defendants' memorandum in support attempt to explain why the plaintiff was kicking, yelling, and cursing nor does it confirm or refute the allegation that the officer defendants performed a search of the plaintiff's cell. Obviously the defendants may not know why an inmate is behaving in a

---

[1] In determining whether a prison official acted maliciously and sadistically the court should consider: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. See *Hudson*, 503 U.S. at 7; *Williams*, 77 F.3d at 762. As will be discussed, the defendants offer no justification for hitting the plaintiff because they contend it never happened. But if a jury believed the plaintiff's version of the events, then the assault would be malicious because there was not reason for it and, therefore, the force of what ever degree employed was grossly disproportionate to the need or threat perceived.

7

particular way, but when the plaintiff has proffered a version of the facts – against the interest of the defendants – it would seem reasonable for the defendants to offer an alternative explanation for the conduct of the plaintiff, consistent with their own account.

In the absence of a more complete explanation of the facts and proffer of evidence, a jury would be justified in believing the plaintiff's account over the defendants'. But even were the defendants able to produce a more coherent description of the incident (to wit, why the plaintiff was yelling, kicking, and cursing; or why they needed to strike him in the face; or why the plaintiff claims that his cell was searched, when it was not), it is still possible that a jury might find the plaintiff simply more credible than the defendants as between the competing versions and conclude that the defendants acted maliciously and sadistically. Certainly, the Court cannot decide it.

As will be discussed in greater detail below, the plaintiff has also pled allegations that, if true, would establish that he suffered pain or injury that was more than *de minimis* in satisfaction of the objective component of his excessive force claim. (*See* Pl. Summ. J. Ex. A.) Accordingly, the plaintiff has pled facts which, if true, would constitute a violation of his constitutional rights under the Eighth Amendment.

This right against excessive use of force was clearly established at the time of the alleged incident. The officer defendants would have been aware of the prohibition against striking an inmate repeatedly, while restrained, in the absence of justification. Accordingly, genuine issues of fact remain such that the defendants are not entitled to immunity.

### III.    *De Minimis* **Injury**

Distinct from their qualified immunity argument but relevant to the same, the defendants contend that the plaintiff's excessive force claim should fail because he

suffered no more than a *de minimis* injury, if he suffered any injury at all. Absent the most extraordinary circumstances, an inmate must provide proof of more than *de minimis* injury. *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994). Typically, the Fourth Circuit has insisted that "[*d*]*e minimis* injury can serve as conclusive evidence that *de minimis* force was used." *Riley v. Dorton*, 115 F.3d 1159, 1168 (4th Cir. 1997). But, the objective component can be met by "the pain itself," even if an inmate has no "enduring injury." *Id*. at 1263 n.4 (citing *Hudson v. McMillian*, 503 U.S. 1 (1992) (citations omitted)). *See Taylor v. McDuffie*, 155 F.3d 479, 484 (4th Cir. 1998) (holding that abrasions on the plaintiff's wrists and ankles and tenderness over the plaintiff's ribs were *de minimis* ). The Fourth Circuit has said, therefore, that where "a prisoner asserts that officials have 'maliciously and sadistically use[d] force to cause harm, contemporary standards of decency always are violated.'" *Williams*, 77 F.3d at 761 (quoting *Hudson*, 503 U.S. at 9). A prisoner, like the plaintiff, asserting malicious and sadistic use of force need not show that such force caused an "extreme deprivation" or "serious" or "significant" pain or injury to establish a cause of action. *Id*. All that is necessary is proof of more than *de minimis* pain or injury. *Id*. A malicious and sadistic use of force is precisely what is alleged.

As to his pain and injury, the plaintiff has submitted an affidavit that the defendant Jeffery Taylor beat him until "blood oozed from his face," and that he was in "agonizing pain" for a week because of the chemical munitions.[2] (Pl. Summ. J. Ex. A.)

---

[2] The Court's ruling is based principally on the allegation that the defendants struck him while restrained. The use of chemical munitions in this case would otherwise be considered at an acceptable level based on the justification offered by the defendants. *See Williams*, 77 F.3d at 763. But, to the extent the plaintiff truly was beaten without provocation while restrained, employing chemical munitions to quell his justifiably irate reaction would seem simply an aggravation and extension of the initial "wrong" and, therefore, should be considered in determining whether the plaintiff

The defendants have produced a medical report which indicates that the plaintiff was examined on the day of the alleged assault and that "[n]o apparent injuries [were] noted."[3] (Def. Mem. Supp. Summ. J. Ex. 6.) The records do confirm that the plaintiff had been gassed. *Id*. There are no other records before the Court that suggest the plaintiff suffered any substantial injury from the incident.

Notwithstanding, the Court finds that even if the plaintiff suffered no enduring injury, a reasonable jury could still find for him on the objective component of his excessive force claim if they believed his testimony that he was beaten in the face while restrained and for no reason, resulting in even limited bleeding, because then he would have established a malicious use of force. *See Williams*, 77 F.3d at 761. The pain resulting from blows to the face and some bleeding would certainly qualify as more than *de minimis* pain.

Said differently, a jury could actually accept the account of the medical records as true and still find for the plaintiff, assuming that they believed his testimony that he was punched in the face repeatedly while restrained.[4]

---

suffered more than *de minimis* pain or injury as a result of a malicious use of force.

[3] The Court would note that this observation appears almost as an afterthought in the record. (Def. Mem. Supp. Summ. J. Ex. 6.) The account principally describes the nurse's inability to examine the plaintiff for his combative behavior and language during her visit to the cell. Specifically, the plaintiff cursed at the nurse as she attempted to examine him, yelling, "I hope you die stank ass bitch." *Id*. At that point, the officer closed the window to the cell. Id. A reasonable jury, therefore, might conclude that the nurse was unable to complete her examination or otherwise fully assess what injuries, if any, the plaintiff might have sustained.

[4] The defendants have also argued that the plaintiff's Section 1983 claim must fail to the extent he has sued them for actions taken in their official capacity. The plaintiff, however, has sued them in their individual capacities for actions that exceeded their authority as officers of the State of South Carolina and under the Constitution of the United States. To the extent he has sued them in their official capacities, those claims would fail.

10

### IV. Defendant Jon Ozmint

The plaintiff has moved to voluntarily dismiss defendant Ozmint, stating that he is now "beyond the gates of reproach." [Doc. 11 (styled as a motion to amend Complaint).] The defendants do not object to the requested dismissal. It is, therefore, granted.

### V. Plaintiff's Motion for Summary Judgment

For all the same reasons that the defendants' motion for summary judgment cannot be granted, the plaintiff's cross motion for summary judgment [Doc. 15] may not be granted. Genuine issues of fact remain as to the incident which the Court may not resolve.

### CONCLUSION

Wherefore, it is RECOMMENDED that the defendants' and the plaintiff's motions for Summary Judgment be DENIED [Docs. 12, 15]. It is further RECOMMENDED that the plaintiff's Motion to Amend Complaint/Voluntary Dismissal [Doc. 11] should be GRANTED and defendant Jon Ozmint should be DISMISSED from the action.

It is so RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

October 30, 2007
Greenville, South Carolina.